(Decided 20th June, 1883.)

---

MARY E. OURSLER, by her next friend and husband, CHARLES H. OURSLER *vs.* THE BALTIMORE AND OHIO RAILROAD COMPANY.

*Construction of a Deed—Res adjudicata—Exemplary damages.*

By deed from W. B. conveying, for a valuable consideration, two small parcels of land to the Baltimore and Ohio Railroad Company, it was expressly agreed and understood between the parties thereto, that the grantee should have the right, which was given along with the land, "to divert from their present channel the waters of the Western Falls of the Patapsco river, as may be required in the alteration of the location of the said railroad as at present constructed, with the understanding, that in constructing a culvert in the said road on its new location, it shall be placed so as to drain, as far as practicable, the former bed of the said Falls after they shall have been diverted from their present channel." HELD :

1st. That in addition to the land conveyed, the deed conferred on the railroad company, the absolute right to divert the waters of

Oursler *vs.* Balto. & Ohio Railroad Co.

the Patapsco from their accustomed channel into an artificial one, so far, and only so far, as might be necessary for the purposes of the railroad company in making the alteration contemplated, in their road.

2nd. That the railroad company was not bound to make a total diversion of the waters, but might make a partial diversion only, if that better suited the necessities of the new construction.

3rd. That when, after constructing an embankment upon which the rails of the new road were laid, and building a culvert, the flood of 1868, by sweeping away the whole newly constructed road and culvert, demonstrated the impracticability of maintaining the road securely by such constructions, it was perfectly competent for the railroad company, under the right acquired by the deed, to make such change in rebuilding the road as would protect it from similar consequences if another flood should come.

4th. That the provision for draining the old bed of the river, " as far as practicable," was subordinate to the main object of the purchase and agreement, to wit, the new and safe construction of the railroad bed across the river.

5th. That perfect drainage was not contemplated or provided for, but only such drainage as could be effected with due regard to the necessities and safety of the road-bed and the structures supporting it.

6th. That the word "culvert," used in the deed, was not to be restricted to an arched water way of masonry, but was to be understood as embracing any water way that should accomplish the drainage " as far as practicable " of the old river bed.

The construction given to a deed in a former suit, in which the parties acquiesced, and from which they took no appeal, is binding in any subsequent suit between the same parties growing out of the same instrument.

Punitive or exemplary damages are only allowed because of the malicious motive which is supposed, from the circumstances attending the wrong, to have animated the wrong-doer and prompted it. If the cause of offence were discontinued with such reasonable promptness as the circumstances of the case allowed, exemplary damages should not be awarded.

APPEAL from the Circuit Court for Howard County.

· The case is stated in the opinion of the Court.

The cause was argued before ROBINSON, YELLOTT, IRVING, and RITCHIE, J.

*James Mackubin,* and *William M. Merrick,* for the appellant.

*Henry E. Wootton,* for the appellee.

IRVING, J., delivered the opinion of the Court.

The main question, for decision in this case, is the true construction of the deed from William Black to the appellee, dated February 7th, 1848. By that deed, in consideration of the sum of eight hundred and fifty dollars, the grantor conveyed to the appellee two parcels of land containing in the aggregate, three-quarters of an acre of land and one rod. Together with the land was acquired the right, on the part of the appellee, to divert the waters of Patapsco river from its natural channel into another channel-way as might be required in the alteration of the location of the grantee's road. The clause in the deed giving rise to this controversy is as follows : "it being hereby expressly agreed and understood between the parties hereto, that the said parties of the second part shall have the right, which is hereby given to them, along with the land aforesaid, to divert from their present channel the waters of the Western Falls of the Patapsco river, as may be required in the alteration of the location of the said railroad as at present constructed ; with the understanding, that in constructing a culvert in the said road, on its new location, it shall be placed so as to drain, as far as practicable, the former bed of the said falls after they shall have been diverted from their present channel ; it being further understood, that whenever the said party of the second part shall cease to use the bed or track of the old road,

now running on the land of the said William Black, the same shall revert to and become the property of the said William Black, his heirs and assigns forever."

It appears from the record, that, at the point where the land conveyed by the deed is located, the Patapsco river ran in a bend almost semi-circular, and the appellee's railroad followed the winding course of the river on its south side over the land of the grantor of the deed. Desiring to straighten the road the appellee bought of William Black the two points of land over which the road, if straightened, would have to pass. To save bridging, the appellee contracted also for the right to divert the river from its accustomed channel (as far as might be required for the purposes of the projected alteration of the road) over the land of William Black, into a new channel-way to the north of the new location as proposed. After the purchase of the land and the right to divert the river, the road was straightened, and the river was turned into an artificial channel on the north side of the newly constructed road-way. This was done by building an embankment from the bed at the western point of intersection with the river, as it then ran, thereby effecting an almost total diversion of the river into the newly made channel-way for it. It was a total diversion, except in so far as some water would percolate through the stone and embankment. Upon the embankment the rails for the road were laid. At the other point of crossing the old river bed, a culvert, about five feet wide and six feet high, was constructed for the purpose of draining the old bed of the river through the plaintiff's land. This condition of the road continued until the year 1868, when a flood carried away both the bank and the culvert, and the river resumed its ancient course. In rebuilding the road, soon after the flood, the appellee, instead of the solid embankment first adopted at the point where the river was diverted, only built it solid about three feet high, and thereon

erected an open trestle, so that whenever the river rose more than three feet above its usual volume, it would flow in upon its old bed, through the appellant's property. It was also in evidence, that the river frequently did overflow in heavy rains. In lieu of the culvert which the flood swept away, the appellee erected a trestle resting upon sills, in some places, five feet apart, and the sills resting upon heavy piles driven in the old bed of the river. This trestle was one hundred and twelve feet long at the bottom, and one hundred and eighty-eight feet long at the top.

The appellant, the owner, by mesne conveyances, from William Black, appellee's grantor, conceiving herself injured by the new method of diverting the stream and construction of the road, by which her land was subjected to occasional overflow, and the drainage of the old river bed was, as she thought, less efficient than by the culvert, in September, 1880, sued the appellee on account thereof. That suit resulted in a verdict in her favor for forty dollars damages, on account of injury sustained, in the opinion of the jury, during the immediately preceding three years. Upon that verdict judgment was entered and there was no appeal.

In the old bed of the river, and on the appellant's land, were some pools of water which the trestle was supposed not to relieve as effectively as the culvert had done. Shortly after the suit ended, the appellee caused a ditch, five feet wide and of sufficient depth to drain the pool nearest the trestle exit, (as appellee insisted,) from that pool, out through the trestle opening, towards the river as it now flows. Regarding this ditch as insufficient to accomplish the drainage provided for in the contract, and not in accordance with the contract, the appellant again sued the appellee, and the rulings of the Court in that suit form the subject of this appeal and our consideration.

In this suit the appellant offered evidence tending to show that since the construction of the trestle, the river at

that point has become filled up with soil, &c., and the waters which ought there to flow off have been obstructed and made to back upon, and render marshy, the plaintiff's land, and cause standing pools of water, which make it unhealthy. On the other hand the appellee offered evidence tending to show that prior to the year 1848, and prior to any alteration in the line of the road, the appellant's land was subject to the frequent overflow of the river from its north bank, and that the land adjoining that bank was marshy and grown up in weeds and bushes, and that after the alteration, water percolated through the rocks and embankment, and that from 1848 to 1868 the old bed of the river had much more water in it than it has had since the construction of the trestle opening, and that since the cutting of the ditch the old bed is drained better than ever before. It was also shown, that behind the appellant's land is a ridge of hills from which, in heavy rains, streams of water are poured down on the appellant's lands, which, sloping as they do from the road towards the old bed of the river, cause pools to be formed, which no culvert could be constructed to take off. The appellee also offered evidence that no part of the appellant's land at that point had ever been cultivated except about one-quarter of an acre, which at the time of the plaintiff's purchase, was cultivated and had been once since seeded by plaintiff in rye.

As a part of the appellant's evidence at the trial the record of the former suit was introduced, together with the instructions of the Court given to the jury on that trial. As those instructions construed the clause in the deed we are again to consider, and to the extent that the same questions are presented, form the law of this case, being acquiesced in and unappealed from, we incorporate them herein. They are as follows: "1st. That under the deed of the 7th of February, 1848, offered in evidence by the plaintiff, the defendants were not bound to divert

wholly and entirely all the waters of the river in case they exercised the right of diversion granted by that deed, and hence the partial diversion effected by the means testified to by the witnesses and made since the flood of 1868, was no violation of their duty on the part of the defendants.

" 2nd. But it was the duty of the defendants in making either a partial or total diversion of the said waters, to construct such an outlet so located under their road, thus newly constructed, as would drain, as far as practicable, the former bed of the river, including the affluents spoken of by the witnesses, which flowed into said old bed above the location of said outlet.

" 3rd. If the jury find, from the evidence, that the outlet by means of the trestle, spoken of and described by the witnesses, does not drain the former bed of the river, including the affluents mentioned in the second instruction, as effectually and practically as an outlet by means of an open stone culvert, or other similar outlet would do, and that the flow of water and drainage of said old bed has been impeded and obstructed by said trestle-work, and the plaintiff has suffered any damage to her property by reason thereof, then for such damages as the jury may find, from the evidence, she has so sustained within three years before the institution of this suit, the plaintiff is entitled to recover."

On the application of the plaintiff, this additional instruction was given on that trial: " The Court instructs the jury that, by the acceptance of the deed of February 7th, 1848, and the diversion of the waters of the Patapsco from their former bed, and the change in the location of the defendant's road, which are admitted facts in this cause, it became, and was thereafter, the continuing duty of the defendant to provide a sufficient culvert, or other equivalent structure, so arranged where the road, in its altered location, passes over the former bed of the river, as at all times to drain, as far as practicable, the waters

which might and would flow along said former bed; and if the jury find that the trestle-work which the defendant has erected at said former bed in the present location of the road, has not drained said waters as far as was practicable, but that by some other structure, or different arrangement of the parts of said structure, said waters might have been more effectually and thoroughly drained than they have in fact been, and that by reason of the defendant's continued use of said trestle-work the flow and drainage of said waters along and over said bed, and within the lands held and occupied by the plaintiff, under the conveyances which have been offered in evidence (if the jury shall find said holding and occupancy under the said conveyances, and the said conveyances,) has not been as complete as it could and might have been made by a different structure, or by some different arrangement of its trestling, within three years next before this suit brought, then the defendant has failed to fulfil the duties incumbent upon it, and the plaintiff is entitled to recover as stated in the third instruction."

At the trial of the second suit, which we are now considering, the Circuit Court again instructed the jury in the language of the first and second instructions already quoted as given on the former trial, and granted other instructions, at the instance of the defendant, adapted to the facts of the case as again presented, and in keeping, as the Court thought, with the construction of the deed adopted at the former trial. In the granting of all the defendant's prayers (except the fourth, which was rejected,) and the rejection of all the plaintiff's prayers except the fifth (which was granted,) exception was taken by the plaintiff, who has appealed, after verdict and judgment in her favor for one cent damages and costs.

We gather from the instructions granted in the first case, and also in this case, that the Circuit Court understood and construed the deed as conferring on the ap-

pellee, in addition to the land conveyed, the absolute right to divert the waters of the Patapsco from their accustomed channel into an artificial one, so far, and only so far, as might be necessary for the purposes of the appellee in making the alteration contemplated, in their road. The appellee might abandon the project altogether if it was deemed advisable. If the plan was carried out the appellee was not bound to make a total diversion of the waters, but might make a partial diversion only if that better suited the necessities of the new construction. A consideration had been paid for the right to be exercised as best promoted the object the purchaser had in view; and it was a continuing right. Hence, when the flood of 1868, by sweeping the whole newly constructed road and culvert away, demonstrated the impracticability of maintaining the road securely by the method of construction first adopted, it was perfectly competent for the appellee, under the right acquired by the deed, to make such change in rebuilding the road as would protect it from similar consequences if another flood should come. The conformation of the surrounding country rendered the river liable to overflow, and the contract did not deprive the grantee of the deed from doing what was deemed necessary to the safety of its structure. The provision for draining the old bed of the river, "as far as practicable," was subordinate to the main object of the purchase and agreement; to wit, the new and safe construction of the railroad bed across the river. The appellant's predecessor in title sold and conveyed to the grantee a valuable right by which the river, which flowed through his land, might be wholly or partially taken from him, and turned in another direction. By that sale any incidental benefits that the river gave were surrendered, and any disadvantage which the total or partial diversion of the water brought him was compensated for in the price paid, and the agreement to drain the old bed through the new road

"as far as practicable." The language employed shows very clearly, that perfect drainage was not contemplated or provided for; but only such drainage as could be effected with due regard to the necessities and safety of the road-bed and the structures supporting it. The Court did not think that the language, "with the understanding that in constructing a culvert in said road, on its new location, it shall be placed so as to drain, as far as practicable, the former bed of said falls," meant that an arched waterway of masonry, as usually understood to be its architectural meaning, was necessarily to be built and maintained. "A culvert" was understood, in its ordinary and common parlance meaning, as a water-way, or water-passage, whether of wood or stone, square or arched. It only meant that such provision should be made for the passage of the water that collected in the old bed of the river, through the railroad as newly constructed, as would drain, "as far as practicable," the old river bed. The kind of water-way, or its precise location, was not provided for. The only thing contracted for was, that when constructed, it should be so placed as to accomplish the drainage mentioned, "as far as practicable." The contract does not say "possible," but practicable, showing that the exigencies of the plaintiff's support for its road were to be first considered, and measured the requirements of the contract. If we felt disposed to adopt a different construction, which we do not, as we fully concur in that view, we should feel bound by the construction accorded to the deed in the first suit, in which the parties acquiesced, and from which they took no appeal. This construction became the law of that agreement from that time onward, unless reversed on appeal in that case, in any subsequent suit between the same parties growing out of the same instrument or cause of action. *Beall vs. Pearre, Adm'r of Brown,* 12 *Md.,* 550.

We will now test the prayers granted and rejected, to which exception has been taken, by the construction ac-

corded to the deed. The first and second prayers of the defendant, as we have before stated, are identical with those granted in the first suit, and which have already been fully set out herein, and being in full conformity with the construction given to the deed, were properly granted. Inasmuch as the first, second, third and fourth prayers of the appellant involved a different construction of the agreement from that which has been indicated, their rejection forms no ground of complaint.

By the fifth prayer of the plaintiff, which was granted, the jury were told "that the defendant is estopped by the verdict and judgment in the former suit offered in evidence, and mentioned in the defendant's second plea in this case, from now averring that the trestle-work spoken of in the evidence was as effectual to drain the old bed of the falls, throughout its entire length through the plaintiff's lands, as a culvert would have been." By this instruction the defendant was restrained from contending before the jury that the trestle-work opening was of itself, and unaided, as effectual a method of drainage as a culvert would have been. It appeared in the proof, as has already been stated, that after the former suit a ditch had been opened from the pool next the trestle, through the trestle onward, which ditch, there was testimony tending to show, drained the old bed more effectually than any arrangement had ever accomplished. In this connection it is proper to state that there was evidence also, that the sills of the trestle-work were four inches below the level of the surface of the water in this pool, and over three feet lower than the surface of the water in the pool most remote. Upon this proof respecting the trestle and the ditch in aid of it, and their efficiency to drain the old bed, the Circuit Court granted defendant's third prayer. By it the jury were substantially told, that if they found that the cutting of that ditch and the opening of the channel, so aided the trestle that the outlet did drain the old river

bed, including the affluents, as efficiently and practically as an outlet by means of an open structure or culvert of stone, or other similar outlet would have done, that the plaintiff was only entitled to damages up to the time of cutting the ditch. This instruction is not only consistent with the fifth prayer of the plaintiff, which was granted, but is also in accord with the agreement in the deed, as we construe it, to the effect that the drainage of the old bed of the river was to be effected, as far as practicable, by some means, through the railroad, but not necessarily by means of a culvert of stone technically so called.

By the granting of the fifth prayer of the plaintiff, the law in respect to the estoppel of the former verdict and judgment upon the defendant as to the superiority of a culvert, as formerly adopted, over the trestle subsequently resorted to, was laid down as unequivocally and strongly as the plaintiff was entitled to ask, and there was no error in rejecting the plaintiff's seventh prayer.

We cannot accede to the contention of the appellant that there was error in rejecting the eighth prayer of the plaintiff. At first it seemed to us there was no reason why, in view of the granting of her fifth prayer, that prayer should not have been granted also. Close inspection, however, shows it would have been misleading. It may have been intended to refer to the trestle-work at the exit of the water from the old river bed, where the culvert was; but its language certainly would bar the construction of referring to the trestle at the point of obstruction or diversion of the river. If it did so refer, or the jury could so understand it, its rejection was proper. For if it does refer to the trestle at the point of deflection of the river, it would be inconsistent with the construction accorded the deed, which justified the new method of constructing the road at that point. If it was not so intended, it was misleading, because the jury might have so understood it. But if it was free from the objection

24                    v. 60.

we have mentioned, and only meant what was expressed in the fifth prayer, then, as the fifth prayer covered the whole ground, there would be no error in refusing the eighth.

By the ninth prayer the plaintiff, in effect, asked the jury to be instructed, that the defendant having once elected a total diversion of the stream, could not after-wards resort to a partial one, by lessening their dam; or, in other words, that having once diverted the whole stream, if since that time they returned a part of the waters into the old bed and some of the waters of the river have since flowed in which would not have flowed in, had the diversion remained as complete as at first made, then the plaintiff was entitled to recover.

It would seem as if the proposition here presented was wholly inconsistent with the first prayer granted the defendant, and the construction of the deed it indicated. It is also insisted by the appellee to be covered by that con-struction given in the first suit, and not now open. On the other hand the appellant contends that though seem-ingly "wrapped up" in that construction, yet the propo-sition was not made in the first case, to have the question of the binding nature of the defendant's election of method of diversion declared. Without inquiring whether the question was necessarily involved in any former rulings, we have no hesitation in saying that we do not think the contract imposed on the appellee the necessity of making such election, as is here contemplated, once for all. Nothing of the kind is hinted at in the deed. The appellee bought the right of doing what it found necessary with the stream in order to the successful carrying out of the new design respecting the road's direction. It was a beneficial and a continuing right. Experience might prove a change of method and building necessary, as it did. The provi-sion, which, in the new structure, has been made for protection against damage by the sudden rise in the

river beyond its usual condition, by admitting the water after the river rises to a certain height to pass over into the old bed and thence out by the old way, was fully warranted by the deed, as we construe it. The rejection of this ninth prayer, therefore, was right.

The fifth prayer of the defendant was properly granted. It only asked that the jury be told that if they found certain damages claimed by the plaintiff by means of the creation of the upper pool, were caused by sand washed into the old bed by the affluents pouring into it, "and by the overflow of water at the western trestle, and that the erection of an open stone culvert as an outlet to drain the old bed of the river, would not have prevented the accruing of such damage," that the plaintiff was not entitled to recover anything by reason of such pool. What we have said respecting the rights acquired by the appellee under the deed to protect itself from the river, by constructing a trestle at the western point, and its qualified duty respecting the drainage of the old bed of the river fully justifies this instruction.

The sixth prayer of the plaintiff, which was rejected, only remains for consideration. By that prayer the Court was asked to instruct the jury, that if they found the wrongs complained of were continued after the conclusion of the former suit, that the jury might give exemplary damages. In support of this prayer it was argued by appellant's counsel, that the non-removal of the trestle, after the conclusion of the former suit in favor of the plaintiff, was, of itself, ground for punitive damages. The authority relied on is 1 *Sedgwick on the Measure of Damages*, and the note referring to 2 *Wheaton's Selwyn N. P.* We think the rejection of this prayer is perfectly consistent with the authorities cited. Punitive or exemplary damages are only allowed because of the malicious motive which is supposed, from the circumstances attending the wrong, to have animated the wrong-doer, and prompted it. If the delay, to remedy the insufficiency of the trestle

opening as a drain for the old bed of the river, had been such as to warrant the inference, that it was prompted by malice, or wilful disinclination to prevent the recurrence of the injury redressed in the former suit, there can be no doubt that exemplary damages should have been awarded. We do not understand the authorities, however, to establish, that the bare continuance for a short space of time of the cause of offence, without respect to the circumstances attending it, or the *bona fides* of the defendant in respect to it, will justify exemplary damages. If the deficiency was remedied with such reasonable promptness as excluded the idea of malicious continuance, exemplary damages ought not to have been awarded. The prayer fails to embody that essential pre-requisite to the right to punitive damages. It is in evidence that the ditch was dug soon after the first trial. How soon it does not appear; but we know from the verdict of the jury that it was before any real damage had resulted from the delay. By the construction given to the provision of the deed, which we have approved, the appellees were not restricted to any particular method of constructing the outlet for the water, so that the old bed of the river was drained "as far as practicable." The former verdict was held by the Court to establish, that the outletting trestle, of itself, was not as efficient, as the first culvert, as an exit for the water ; but it was held that the digging of the ditch in aid of it, if it accomplished the drainage, was an admissible method of doing the work under the true meaning of the agreement. The Court below manifestly supposed there was no evidence tending to show that this ditch was not dug with such promptness as indicated wilful trifling with plaintiff's rights, so as to justify exemplary damages. It is a rejected prayer, and in the absence of any proof on the subject, we must conclude the Court was right. We find no error, and the judgment will be affirmed.

*Judgment affirmed.*

(Decided 20th June, 1883.)