IULA, ET AL. v. PROGRESS FEDERAL SAVINGS
AND LOAN ASSOCIATION, ET AL.

[No. 417, September Term, 1966.]

*Decided July 12, 1967.*

The cause was argued before HAMMOND, C. J., and MAR-
BURY, OPPENHEIMER, BARNES and McWILLIAMS, JJ.

*Morgan L. Amaimo* for appellants.

*B. Conway Taylor, Jr.,* with whom was *Paul F. Due* on the
brief, for appellees.

McWILLIAMS, J., delivered the opinion of the Court.

The mortgage foreclosure which generated this litigation was
first treated in *Carozza v. Peacock Land Corp.,* 231 Md. 112,
188 A. 2d 917 (1963). The effect of our decision in that case
was to set the sale aside and order a new sale. After the re-
sale was finally ratified appellants filed a suit for damages in
the Court of Common Pleas of Baltimore City which resulted
in a summary judgment against them for costs. To promote the
cause of brevity and clarity we have prepared a cast of partici-
pants which is set forth below:

Peacock —Peacock Land Corporation.

Iula —Frank J. Iula, an appellant, president and one of
the three stockholders of Peacock.

Carmela —Carmela A. Iula, an appellant, the second of the
three stockholders of Peacock.

Margie —Margie R. Iula, an appellant, the third of the
three stockholders of Peacock.

Chipman —Nolan P. Chipman, Esq., an appellant, trustee
for the benefit of creditors of Peacock.

Progress —Progress Federal Savings and Loan Association,
an appellee.

Phillips —John J. Phillips, Esq., an appellee, trustee appointed by the Circuit Court for Baltimore County to foreclose the mortgage from Peacock to Progress.

Carozza —Frank A. Carozza, representing himself and others, the successful bidder at the first foreclosure sale.

In 1957 Peacock owned a parcel of land at York and Timonium Roads in Baltimore County containing approximately 1⅔ acres on which it conducted a drive-in restaurant. On 22 April 1957 Peacock conveyed .083 acres (of the 1⅔ acres) to Baltimore County. On 31 December 1957 Peacock mortgaged the remainder of the property to Progress to secure a loan of $140,000. Included in the description was the .083 acres sold to Baltimore County 8 months earlier. Iula signed the mortgage both as president of Peacock and as an individual. The mortgagors warranted "specially the property [t]hereby conveyed."

On 4 August 1961, default having occurred, the Circuit Court for Baltimore County appointed Phillips trustee to make sale of the mortgaged property.

On 25 September 1961 Peacock conveyed the property, including the .083 acres, to Chipman, "in trust for the benefit of [Peacock's creditors]." Chipman was successful in having the foreclosure sale postponed so as to attempt an advantageous private sale of the property. His efforts were in vain.

On 31 October 1962 Peacock's charter was forfeited because of the non-payment of its franchise tax.

On 10 November 1961 Phillips sold the property to Carozza, the highest bidder at the foreclosure sale, for $275,000. When a title examination revealed the prior conveyance of the .083 acres, Carozza excepted to the ratification of the sale. The decision of the trial court overruling his exceptions was reversed in *Carozza v. Peacock Land Corp., supra.*

In March 1963 the property was resold for $224,000. No exceptions were filed by Peacock, Iula or Chipman, nor was any complaint made to Progress or Phillips in respect of the manner in which the sale was conducted.

Carozza succeeded in having the Baltimore County court rule that Phillips had to pay for the cost of the title examination and certain court costs but the greater portion of his claim was denied. An appeal by Carozza was subsequently dismissed. Chipman also sought, unsuccessfully, to charge Progress and Phillips with costs, interest and expenses incident to the first sale. No appeal was taken from the court's ruling.

The instant case arises out of the second amended declaration of Iula, Carmela and Margie as "sole stockholders, directors and trustees" of Peacock (and Chipman), filed April 1966, against Progress and Phillips. The declaration charges Progress with violating its duty "to use due and reasonable care in handling" the transaction for Peacock, and "to search the title correctly, so that the mortgage would include only the land owned by" Peacock. The declaration further alleges that "by virtue of the gross and wanton negligence, carelessness and irresponsibility" of Progress and Phillips, the plaintiffs "lost the benefit of the best marketable [sic] price of the subject properties." The *ad dammum* was $1,100,000.

Progress and Phillips moved for a summary judgment and in support thereof filed an affidavit, the substance of which is as follows:

1. As a result of the deed from Peacock to Chipman neither Peacock nor its stockholders and directors had any interest in the land.

2. Progress, in accepting the mortgage and subsequently foreclosing it, relied on independent counsel and the special warranty of Iula and Peacock. Phillips was not employed by Progress. He was a court-appointed fiduciary, entirely independent of Progress. Neither Progress nor Phillips knew of the inclusion of the .083 acres until after the filing of exceptions to the sale. Iula knew of the conveyance of the .083 acres and that Peacock had been paid for it. Iula did not disclose this, although he and Peacock warranted specially the property described in the mortgage.

3. Iula was a party to the foreclosure proceedings, he was represented by counsel and he learned of the error in the advertisement "within a few days subsequent to 10 Sep-

tember 1961" but he did nothing "to cause Chipman to do other than what he did." Iula testified in May 1962, at a hearing on the exceptions, that "the advertisement was substantially correct."

4. The resale of the property was fully advertised, well attended and fairly conducted. The sale price was representative of its true value. Peacock, Iula, Carmela, Margie and Chipman were represented at the sale. None of them filed exceptions or otherwise complained.

5. Chipman tried his best to protect the interests of the stockholders and the creditors of Peacock. The first sale was postponed at Chipman's request pending his attempts to make an advantageous private sale of the property. After Chipman learned of the error in description he at no time took issue with Phillips' course of action and, in fact, expressed an opinion that the error was not sufficiently serious to set the sale aside.

6. After the reversal by this Court, Carozza sought to surcharge Phillips and Progress, because of their alleged negligence, with fees and expenses and Iula was a party to those proceedings. The appeal from the denial of the major portion of Carozza's exceptions was later dismissed. Chipman also sought to surcharge Phillips and Progress for their alleged negligence. After a hearing his petition was denied and no appeal was taken. Iula was a party, represented by counsel, in all of these proceedings but neither he nor Carmela nor Margie made any attempt to surcharge Progress or Phillips because of their alleged negligence.

Iula filed an affidavit of defense but as Judge O'Donnell pointed out it was "short on facts." He observed that it read "more like the answer to a bill of complaint." We have examined it carefully and we agree.

In a lengthy and well-considered opinion Judge O'Donnell set forth his reasons for granting a summary judgment in favor of Progress. He related the complex factual situation in much greater detail than we have attempted here. He reviewed and discussed many decisions of this Court and we think his appli-

cation to the instant case of the principles therein contained, as well as the provisions of the cited statutes and the Maryland Rules of Procedure, was correct. After a full discussion of the effect of the special warranty in the mortgage to Progress, he concluded:

> "Although there is no suggestion that the failure to disclose the prior conveyance resulted from any fraud or deceit, the Peacock Land Corporation, and all those claiming under it, are bound by the covenant and its effect. The full legal force and effect of the covenant of special warranty cannot be avoided by the party-Plaintiffs.
>
> "To apply logic set forth in *Stewart v. Devries,* (1895) 81 Md. 525 and *Boring v. Jungers,* (1960) 222 Md. 458 (although the facts in each of those cases are different), the Plaintiffs here would have no standing to complain of the misrepresentations in the advertisement if they (or Chipman, as Trustee) knew the facts as they actually existed."
>
> \* \* \*
>
> "If the Plaintiffs (whose rights flow from the Corporation) were here entitled to recover under any theory from Progress Federal, they would be subject to suit under the covenant of special warranty executed by the Corporation and individually by Frank J. Iula, one of the Plaintiffs."

Holding that the adequacy of the selling price and the fairness of the resale were *res judicata,* he said:

> "The ruling by the Circuit Court for Baltimore County on the exceptions [attempt to surcharge] filed by Chipman, as Trustee for the benefit of the dissolved Corporation, is *res judicata,* concerning the adequacy of the selling price and the fairness of the sale which was conducted of the property which was actually owned by the Corporation at the time it executed the Mortgage.
>
> "As pointed out by the Court of Appeals in *Carozza*

*v. Peacock Land Corporation, supra,* the exceptants and purchasers at the sale, which was incorrectly advertised, were influenced, in the price offered at $275,-000.00, in the frontage which they thought they were purchasing of about 330 feet along York Road. The lack of the frontage on York Road was the 'crux of the whole thing.'

"The contentions by the Plaintiffs that the price of $225,000.00 was inadequate for the sale of the property which the Corporation did still own was disposed of by an adverse ruling thereon in the Circuit Court for Baltimore County."

Prolonging this opinion by restating most of what Judge O'Donnell has already said will serve no useful purpose and we see no reason for disturbing his decision. A motion to dismiss the appeal was filed by appellees but in light of our affirmance of the lower court we think it unnecessary to consider it.

We note that the summary judgment was granted only in favor of Progress. Why a similar judgment in favor of Phillips was not ordered is not clear. The case will be remanded for the clarification of his status.

> *Judgment in favor of Progress Federal Savings and Loan Association affirmed.*
> *Case remanded for the clarification of the status of John J. Phillips.*
> *Appellants to pay the costs.*