33 A.3d 480

**Steven J. OCHSE, et ux.**

v.

**William O. HENRY, et ux.**

No. 02098, Sept. Term, 2009.

Court of Special Appeals of Maryland.

Dec. 21, 2011.

522

524

Michael J. Jacobs (Melanie J. Barney, Jacobs & Barney, on the brief), Easton, MD, for Appellant.

John Billmyre, Easton, MD, for Appellant.

Panel: WOODWARD, HOTTEN, CHARLES E.
MOYLAN, JR. (Retired, Specially Assigned), JJ.

HOTTEN, J.

Appellants, Steven J. Ochse and Shari Ochse ("the Ochses"),
purchased residential property in Dorchester County from
Appellees, William O. Henry and Jessie Henry ("the Henrys").
The Ochses filed a "Complaint for Reformation and for De-
claratory, Injunctive and Related Relief" in the Circuit Court
for Dorchester County against the Henrys regarding refer-
ences in the deed concerning the ability of others to use the
Ochses' driveway. The Ochses joined Dorchester County as a
defendant after the Henrys presented a 1919 deed purportedly
conveying to Dorchester County a 30–foot wide strip of land
over the Ochses' property in fee simple.

The Ochses and Dorchester County filed cross-motions for
summary judgment. Ruling on the motions, the circuit court
held that the county owned a 30–foot wide strip of land at
some unidentified location on the Ochses' property that divid-
ed the property into two smaller separate parcels. At the
conclusion of trial, the court ruled in favor of the Henrys,
reserving on the question of attorney's fees. Thereafter, the
circuit court entered judgment in favor of the Henrys in the
amount of $100,020.00 for attorney's fees. The Ochses timely
appealed and posted a cash security in lieu of an appeal bond
to stay enforcement of the judgment.[1]

This Court ordered mediation on February 23, 2010. Dor-
chester County was dismissed from the case once the county
conveyed its interest in the 30–foot wide strip to the Ochses.
The Ochses present the following issues for our review, which
we quote:

---

[1]. Pursuant to Maryland Rules 8–431 and 8–501(c), (c), the Ochses filed
a Motion to Strike Materials Not of Record Included in the Supplemen-
tal Extract of Appellees' Brief and Discussion Thereof, which we hereby
grant pursuant to Maryland Rule 8–432(a).

1. Did the Trial Court err in determining that the Henrys did not breach their special warranties to the Ochses?

2. Having found that there was a mutual mistake of material fact by the parties as to the existence of a 30–foot strip of land owned in fee simple by the County that bisected the property sold by the Henrys to the Ochses, did the Trial Court err in holding that the contract of sale was merged into the deed?

3. Did the Trial Court err in applying Maryland law to the evidence of record with respect to its finding that the Henrys did not make material misrepresentations to induce the Ochses to enter into the contract to purchase the property from the Henrys?

For the reasons that follow, we shall reverse the judgment of the circuit court.[2]

## FACTUAL AND PROCEDURAL BACKGROUND

Dorchester County sought to build a new county road to access the properties of several landowners. On March 2, 1919, the county acquired a fee simple determinable interest in a 30–foot wide strip of land from H.B. and Nora Messenger through a deed, which in relevant part, stated:

> if the said road is abandoned by the said County Commissioners of Dorchester County, or their successors in office, the lands hereby conveyed shall revert back to the said grantors, their heirs and assigned, so far as the same are within the bounds of the lands of the respective grantors. . . .

---

**2.** In response to the Ochses' Motion for Limited Reconsideration and Motion to Publish Unreported Opinion, our previously filed opinion in this matter has been clarified to indicate that the Ochses are able to sue on the underlying contract based on mutual mistake or misrepresentation, avoiding merger of the contract with the deed. Because the contract contained an attorney's fees provision, the Ochses are entitled to attorney's fees. While title issues have been resolved, the circuit court must view the case as it appeared when initiated.

On November 23, 1929, H.B. Messenger conveyed by deed his property to Dorchester County following a tax sale, but on June 17, 1930, Dorchester County reconveyed the same property to H.B. Messenger and Esther White Messenger.[3] On June 29, 1972, H.B. Messenger deeded a thirty-five acre parcel of land to R.T.R., Inc.

The Henrys purchased the thirty-five acre tract from R.T.R., Inc. on March 19, 1987. The Henrys constructed a culvert[4] across a branch of Marshy Hope Creek, known as the Miles Branch. The culvert allowed access to Mowbray Creek Road, a private road that ended on the other side of the Miles Branch, from the dirt driveway on the property. The Henrys resided in a farmhouse on the property and constructed a second home on the property. Following an unsuccessful attempt to sell the second residence, the Henrys subdivided a 4.791 acre parcel around the second residence, reserving 15.209 acres on the larger parcel to meet the 20 acre critical area requirement. Dorchester County approved the subdivision on July 22, 1998.

The Henrys, thereafter, listed the subdivided parcel for sale as a residence on a 4.791 acre parcel that was owned in fee simple. The Henrys provided disclaimers to prospective purchasers, verifying that there were no recorded or unrecorded easements other than for utilities. Mr. Henry gave the Ochses tours of the subdivided property and its boundaries on at least three occasions. On September 13, 2001, the Ochses entered into a contract with the Henrys to purchase the subdivided property.

---

3. While the rationale behind the conveyance to the county and the county's reconveyance to H.B. and Esther Messenger remains unclear, based on a review of the land records, it appears to be the result of the Messengers paying taxes owed to the county.

4. A culvert is an enclosed drain for carrying water under a road or railroad. *Oursler v. Balt. & Ohio R.R. Co.*, 60 Md. 358, 367 (1883). In this case, the Henrys constructed a road across the Miles Branch with a large pipe perpendicular to and under the road to allow water to pass underneath.

The Henrys conveyed a fee simple interest in approximately 4.791 acres to the Ochses as tenants by the entireties on December 14, 2001. The deed from the Henrys to the Ochses indicated that the interest was "SUBJECT, HOWEVER, to the rights of others legally entitled to the use of a 'Driveway,' for purposes of ingress, egress and regress" over the property. At closing, the title company agent advised the Ochses that the reference in the deed to the use of a "Driveway" simply referred to utility easements.

On December 11, 2007, the Ochses filed a complaint against the Henrys, seeking reformation of the deed, a declaratory judgment, injunctive relief, and damages for breach of contract, breach of special warranties, and fraud in the inducement. An amended complaint naming Dorchester County was subsequently filed on April 11, 2008. The Henrys filed a counterclaim for attorney's fees based on the underlying contractual provision between the Henrys and the Ochses, which specifically survived any merger with the deed, to which the Ochses responded.

On August 4, 2008, the circuit court, in its rulings on cross-motions for summary judgment filed by the Ochses and Dorchester County, declared that Dorchester County owned the 30–foot wide strip of land across the Ochses' property in fee simple. After a two day bench trial, the circuit court concluded that the contract merged into the deed and that there was no breach of the special warranties of title.[5] The circuit court refused to reform the deed or issue a declaratory judgment with injunctive relief. The court then entered a judgment in favor of the Henrys against the Ochses for attorney's fees in the amount of $100,020.00 based on the "fee-shifting provision" in the parties' contract, which specifically stated that the "fee-shifting provision" did not merge with the deed. Finally, the circuit court denied the Ochses' request for a right-of-way by necessity because the Ochses' property was not landlocked.

---

**5.** The circuit court did not address the special covenant against encumbrances.

The Ochses filed a timely appeal, and we ordered mediation. As a result of the mediation, Dorchester County executed a quitclaim deed, giving the Ochses the county's interest in the 30–foot wide strip of land over the Ochses' property. Dorchester County was later dismissed as a party to this appeal.

## STANDARD OF REVIEW

When an action has been tried without a jury, we "review the case on both the law and the evidence." Md. Rule 8–131(c). We, however, "will not set aside the judgment of the trial court on the evidence unless clearly erroneous, and will give due regard to the opportunity of the trial court to judge the credibility of the witnesses." *Id.* "The deference shown to the trial court's factual findings under the clearly erroneous standard does not, of course, apply to legal conclusions." *Nesbit v. Gov't Employees Ins. Co.,* 382 Md. 65, 72, 854 A.2d 879 (2004). Where a case involves the "application of Maryland statutory and case law, our Court must determine whether the lower court's conclusions are 'legally correct' under a *de novo* standard of review." *Walter v. Gunter,* 367 Md. 386, 392, 788 A.2d 609 (2002).

## DISCUSSION

### I. Covenants

The Henrys presented both a special covenant against encumbrances and a covenant of special warranty of title in the deed to the Ochses, which stated:

> And the said Grantors do hereby covenant that they have not done or suffered to be done any act, matter or thing whatsoever to encumber the property hereby conveyed; that they will warrant specially the property hereby conveyed; and that they will execute such other and further assurances of the same, as may be requisite.

The Ochses argue that the circuit court erred in determining that the Henrys did not breach the special covenant against encumbrances or the covenant of special warranty of

title. They contend that the Henrys' execution and recording of the 1998 subdivision plat created serious title problems for the Ochses as purchasers of the subdivided parcel. The Henrys counter that even though the Ochses did not raise the issue of special covenant against encumbrances at trial, the circuit court correctly found no breach because the Henrys were unaware of the 1919 deed and did not act to affect the title or create an encumbrance during their ownership.

## A. Special Covenant against Encumbrances

"An encumbrance is any right or interest held by someone other than the grantee or grantor which diminishes the value of the estate *but not so much that it leaves the grantee with no title at all."* *Magraw v. Dillow,* 341 Md. 492, 502, 671 A.2d 485 (1996) (emphasis added). Though it has no precise meaning, an encumbrance "includes security instruments, leases, mechanics' liens, property tax assessment liens, easements, future interests and covenants running with the land at the time of conveyance, other than those specifically set forth in the deed." *Id.*

A covenant against encumbrances is a "present covenant" that is breached upon delivery of the deed if any encumbrance exists. *Marathon Builders, Inc. v. Polinger,* 263 Md. 410, 414, 283 A.2d 617 (1971). "They do not usually run with the land, but serve only to benefit the covenantee." *Magraw,* 341 Md. at 502, 671 A.2d 485 (citing *Levine v. Hull,* 135 Md. 444, 447, 109 A. 141 (1919)).

The covenant that the grantor has not encumbered the property has been codified in Md.Code (2010), § 2–110 of the Real Property Article ("R.P."), which states:

A covenant by the grantor in a deed "that he has done no act to encumber the land" has the same effect as if he had covenanted that he had not done, executed, or knowingly suffered any act or deed whereby the land granted, or intended to be, or any part of it, is or will be charged, affected, or encumbered in title, estate, or otherwise.

"The *special* covenant against encumbrances, expressed either in the abbreviated form of [R.P.] § 2–110, or in the traditional common law forms, warrants that the land conveyed is free of encumbrances created by the grantor." *Magraw*, 341 Md. at 503–04, 671 A.2d 485 (emphasis in original). When "a *special* covenant against encumbrances is given, a grantor will *not* be held liable for the acts of a predecessor in title who encumbered the property." *Id.* at 504, 671 A.2d 485 (emphasis in original). The Henrys' recording of the subdivision plat in 1998 created the 4.791 acre parcel. The Ochses characterize the county's interest as an encumbrance. However, the Henrys' subdivision and recording of the 1998 subdivision plat did not encumber the property because the Henrys did not own the 30–foot wide strip of land previously deeded to Dorchester County. The 1919 deed to the county from the Henrys' predecessor gave the county actual title to the 30–foot wide strip of land, which is substantially more than a mere encumbrance. *See Magraw*, 341 Md. at 502, 671 A.2d 485. While diminishing the value of the overall estate, the grant to the county left the Henrys' predecessor, and later the Henrys, without title to the 30–foot wide strip of land. As such, the county held the 30–foot wide strip in fee simple, leaving the Henrys as grantors with no interest in the 30–foot wide strip. Accordingly, the Henrys did not breach the special covenant against encumbrances because the county's interest was not an encumbrance.

■ As the Ochses note, the circuit court incorrectly reasoned that there was no breach of the special covenant against encumbrances because there was no breach of the special warranty of title. While related, the covenants are distinct. "In contrast to a special warranty, the protection afforded by a covenant against encumbrances is not limited to claims 'by, through or under the grantor'; rather it extends to claims by third parties that may reduce the value of the property." *Dillow v. Magraw*, 102 Md.App. 343, 368–69, 649 A.2d 1157 (1994). The covenant against encumbrances " 'protects the covenantee, its successors and assigns, against rights or interests in the property conveyed which *subsist in third persons*

and diminish the value of *the estate* even though they are consistent with the passage of the fee in the estate.' " *Id.* at 369, 649 A.2d 1157 (quoting *Marathon Builders,* 263 Md. at 416, 283 A.2d 617) (emphasis in original). Here, the county's interest was in fee simple, so the Henrys could not pass the estate in fee and, thus, did not breach the special covenant against encumbrances.

B. Covenant of Special Warranty of Title

■ In *Gittings v. Worthington,* 67 Md. 139, 150, 9 A. 228 (1887), the Court of Appeals originally distinguished covenants of special warranty and general warranty as follows:

> special warranties [are] distinct covenants that [the grantor is] not to be answerable for any losses which might occur from the assertion of a title superior to his own; that if he is required to protect [the grantee] from [claims of superior title], he is in effect made to give [the grantee] all the benefit which could be derived from a general warranty. . . .

More recently, in *Dillow,* 102 Md.App. at 365, 649 A.2d 1157 (citing 20 Am.Jur.2d *Covenants, Conditions, and Restrictions,* § 53 (1965)), we expanded on the issue:

> [A] special warranty does not protect the grantee from claims of superior or paramount title. A covenant of special warranty, in contrast to a covenant of general warranty, is limited as to the persons or claims to which it operates. It protects the covenantee against claims by, though or under the grantor, but does not warrant title "against a claim under a title against, or superior to, his grantor."

This common law principle has been codified in R.P. § 2–106:

> A covenant by a grantor in a deed "that he will warrant specially the property hereby granted" has the same effect as if the grantor had covenanted that he will warrant forever and defend the property to the grantee against any lawful claim and demand of the grantor and every person claiming or to claim by, through, or under him.

The Ochses rely on *Iula v. Progress Federal Savings and Loan Association*, 247 Md. 421, 231 A.2d 510 (1967), and *Marcus v. Bathon*, 72 Md.App. 475, 531 A.2d 690 (1987), to support their contention that the Henrys breached the covenant of special warranty of title. In *Iula*, the mortgagor of a parcel of real property sold a small section of the property to Baltimore County, but later mortgaged the entire property, including the previously sold portion, with a covenant of special warranty of title. 247 Md. at 423, 231 A.2d 510. The mortgagee foreclosed on the property and sold the entire parcel to satisfy the mortgagor's debt. *Id.* at 423, 231 A.2d 510. In a predecessor case, the Court of Appeals set aside the foreclosure sale based on the title defect from the mortgagor's sale of a portion of the property. *Id.* (citing *Carozza v. Peacock Land Corp.*, 231 Md. 112, 188 A.2d 917 (1963)). The property, without the previously sold portion, was resold at a lower amount, and the mortgagee then sued for damages. *Iula*, 247 Md. at 422–23, 231 A.2d 510. The lower court entered summary judgment for the mortgagor for the difference in value between the entire parcel and the parcel less the previously sold portion. *Id.* at 425–26, 231 A.2d 510. The Court of Appeals upheld that decision because the mortgagor breached the covenant of special warranty of title by conveying a portion of the property. *Id.* at 426–27, 231 A.2d 510.

Here, however, the issue stems from a conveyance to Dorchester County in 1919, well before the Henrys took title to the property. While the Henrys' subdivision of the 4.791 acre plot in 1998 separated that parcel from the lot, the county owned the 30–foot wide strip of land since 1919. Therefore, at the time of subdivision, as well as the time the Henrys purchased the land, a section of the parcel was owned by the county, so the title defect was created by the Henrys' predecessors in 1919. Unlike the mortgagors in *Iula* who were responsible for the title defect that occurred during their ownership, the Henrys were not responsible for the defect in title that arose from the 1919 transfer to the county because it was not during their ownership.

In *Marcus,* a purchaser of real property sued the seller, alleging fraudulent misrepresentation as to the quantity of the parcel and, alternatively, mutual mistake of fact as to the quantity of land. 72 Md.App. at 478, 531 A.2d 690. The purchaser also alleged that the seller breached the covenants against encumbrances, of special warranty, and of further assurances contained in the deed. *Id.* The controversy arose out of the sale of land that the seller, relying on a recent survey, advised was 5.9455 acres "more or less." *Id.* at 480–81, 531 A.2d 690. A survey by the state a year after the sale determined that the actual area was only 4.944 acres. *Id.* at 481, 531 A.2d 690. The lower court granted summary judgment for the sellers with respect to all claims. *Id.* at 478, 531 A.2d 690. This Court held that summary judgment was properly granted on the issue of fraudulent misrepresentation because the sellers were relying on a surveyor's computation of the acreage and had no reason to know there was a miscalculation. *Id.* at 483, 531 A.2d 690. We also upheld summary judgment as to breach of the covenant of special warranty because there was no covenant concerning the quantity of the land conveyed; thus, there could be no breach. *Id.* at 486, 531 A.2d 690.

In their brief, the Ochses cite the following language from *Marcus:*

> Where a deed containing covenants of special warranty and of further assurances sets forth a specific metes and bounds description of the property conveyed[,] the representation of the quantity of acreage within the metes and bounds cannot be construed as an express or implied covenant of quantity and will be rejected if inconsistent with the actual area. Very little stress is placed on words of general description as to the extent of a conveyance, such as an estimation accompanied by the words "more or less," when the instrument also contains a particular description of the property conveyed.

*Id.* (internal citations omitted). The Ochses contend that this passage implies that there is a breach of the covenant of special warranty of title when the specific metes and bounds

description, rather than the acreage, of the property conveyed is inaccurate.

This case mirrors *Marcus* in that the overall quantity of land conveyed was slightly less than the quantity listed on the deed. The slight deviation in acreage alone, in accordance with *Marcus*, does not, however, breach the covenant of special warranty, interpreting "+/-" as "more or less." The Ochses, nevertheless, assert that the 1998 subdivision plat and the 2001 deed incorrectly stated the metes and bounds of the property and should have set forth boundaries for two smaller, separate parcels divided by the 30–foot strip.[6] While we recognize that the facts present more than a mere misstatement of acreage, the 30–foot wide strip had been owned by Dorchester County since 1919, well before the Henrys purchased the property. Furthermore, while the subdivided parcel did not come into existence as a separate parcel of land until 1998 under the Henrys' ownership, the lack of title to the 30–foot wide strip of land dates back to 1919. Therefore, the circuit court correctly determined that the Henrys did not breach the covenant of special warranty of title.

## II. Merger

The Ochses argue that the facts presented at trial clearly establish the existence of fraudulent misrepresentation or mutual mistake. The Ochses make this argument because either fraudulent misrepresentation or mutual mistake prohibits merger of the contract for sale into the deed, which would allow them to sue for breach of contract. In response, the Henrys state that the Ochses' only argument at trial in support of merger prevention was that the Henrys engaged in fraud. The Henrys further contend that the Ochses are barred from arguing mutual mistake because they only raised the issue after the circuit court rejected their fraud theory. The circuit court's September 17, 2009 Opinion briefly examined the Ochses' breach of contract claim and stated that there

---

6. It is worth noting that neither of the smaller parcels satisfy the Chesapeake Bay Critical Area requirements.

was "no evidence of fraud," so the merger doctrine was "unavoidable," barring the Ochses' breach of contract claim.

The Ochses argue that they should be able to sue on the contract because the contract did not merge with the deed. The Ochses believe they are entitled to seek redress under paragraphs 5 and 34 of the contract, which state:

> 5. ESTATE: The Property is being conveyed: __X__ in fee simple or _____ subject to annual ground rent. . . .

> \* \* \*

> 34. DEED AND TITLE: Upon payment of the purchase price, a deed for the Property containing covenants of special warranty shall be executed by the Seller and shall convey the Property to Buyer. *Title to the Property, including all chattels included in the purchase, shall be good and merchantable, free of liens and encumbrances* except as specified herein; except for use and occupancy restrictions of public record which are generally applicable to properties in the immediate neighborhood or the subdivision in which the Property is located and publicly recorded easements for public utilities and any other easements which may be observed by an inspection of the Property. Buyer expressly assumes the risk that restrictive covenants, zoning laws or or [sic] other recorded documents may restrict or prohibit the use of the Property for the purpose(s) intended by the Buyer. In the event Seller is unable to give good and merchantable title or such as can be insured by a Maryland licensed title insurer, with Buyer paying not more than the standard rate as filed with the Maryland Insurance Commissioner, Seller, at Seller's expense, shall have the option of curing any defect so as to enable Seller to give good and merchantable title or, if Buyer is willing to accept title without said defect being cured, paying any special premium on behalf of Buyer to obtain title insurance on the Property to the benefit of Buyer from a Maryland licensed title insurer, Buyer shall have the option of taking such title as Seller can give, or terminating this Contract and being reimbursed by Seller

for cost of searching title as may have been incurred not to exceed 1/2 of 1% of the purchase price. In the latter event, there shall be no further liability or obligation on either of the parties hereto and this Contract shall become null and void and all deposits hereunder shall be returned to Buyer in accordance with the terms of this Contract. In no such event shall the Brokers or their agents have any liability for any defect in Seller's title. (Emphasis added by the Ochses).

The Ochses sought to sue on the underlying contract and its language that "[t]itle to the Property, including all chattels included in the purchase, shall be good and merchantable, free of liens and encumbrances." Because the Henrys contracted to convey a single 4.791 acre parcel in fee simple to the Ochses, which was not accomplished in light of the 30–foot wide strip then owned by Dorchester County, the Ochses allege that the circuit court erred in finding that the contract merged into the deed and barred a breach of contract suit.

"The general rule is that a deed includes all prior negotiations and agreements leading up to its execution and delivery, so that a merger is thereby effected." *Dorsey v. Beads,* 288 Md. 161, 170, 416 A.2d 739 (1980) (quoting 4 H. Tiffany, *Law of Real Property* (3d ed.1975) § 981.05). In *Barrie v. Abate,* 209 Md. 578, 582–83, 121 A.2d 862 (1956) (citing *Stevens v. Milestone,* 190 Md. 61, 65, 57 A.2d 292 (1948); *Edison Realty Co. v. Bauernschub,* 191 Md. 451, 458, 62 A.2d 354 (1948)), the Court of Appeals also stated:

> It is an accepted rule that a *prima facie* presumption arises from the acceptance of a deed that it is an execution of the entire agreement for the sale of the realty, and the rights of the parties in relation to the agreement are to be determined by the deed.

" 'Generally, contract provisions as to title, possession, quantity or enablements of land are conclusively presumed to be merged into the subsequently delivered and accepted deed, even though the contract and deed vary.' " *Dorsey,* 288 Md. at 170–71, 416 A.2d 739 (quoting 4 H. Tiffany, *Law of Real*

*Property* (3d ed.1975) § 981.05). Yet, " '[t]he rule of merger is, of course, subject to avoidance when the defenses of fraud and mistake are properly invoked.' " *Dorsey,* 288 Md. at 171, 416 A.2d 739 (quoting 4 H. Tiffany, *Law of Real Property* (3d ed.1975) § 981.05).

### A. Fraudulent Inducement

 The Ochses contend that the evidence produced at trial was "overwhelming and consistent" that the Henrys made material written and verbal misrepresentations to the Ochses about the property. Specifically, Mr. Henry walked with the Ochses and pointed out what he thought were the specific boundaries of the 4.791 acre parcel and the private nature of the driveway on the property.

The Ochses relate the above facts to *Piper v. Jenkins,* 207 Md. 308, 113 A.2d 919 (1955), in support of their fraud argument. The seller in *Piper* walked the purchasers around the unmarked land and pointed out that the eastern boundary line was one foot east of a garden on the east side of the house, so the improvements to the property were entirely within the property's boundaries. *Id.* at 312, 113 A.2d 919. Almost five years later, the purchasers discovered that the improvements actually projected outside the property's boundaries. *Id.* at 312, 113 A.2d 919. The Court of Appeals held that:

> where the boundaries of land are unmarked and the vendor undertakes to point out the boundaries to the purchaser, he is under an obligation to point them out correctly; and the purchaser has a right to rely upon such a representation, without being required to make an examination of the land records or to employ a surveyor to make a plat of the land, and *he can hold the vendor liable for any fraudulent misrepresentation.*

*Id.* at 314, 113 A.2d 919 (citations omitted) (emphasis added). Elaborating, the Court stated that:

> a purchaser of land has a right to rely upon representations made to him by the vendor as to its location when the facts concerning which the representations are made are un-

known to the purchaser; and the vendor can be held liable for damages if he makes a false representation as to its boundaries *with knowledge of its falsity or with reckless disregard for its truth or falsity,* and the purchaser relies upon it.

*Id.* at 313, 113 A.2d 919 (citations omitted) (emphasis added).

The Court limited its holding, however, by providing that if the vendor merely expresses an opinion or estimates the boundaries or distances, "the purchaser cannot rely upon such a representation as a fact but must ascertain the boundary lines for himself." *Id.* at 313–14, 113 A.2d 919. Further, the Court noted that "where the means of knowledge are at hand, and the purchaser undertakes to make an examination of the land records, he cannot say that he was deceived and injured by misrepresentations of the vendor." *Id.* at 314, 113 A.2d 919 (citing *Shappirio v. Goldberg,* 192 U.S. 232, 241–42, 24 S.Ct. 259, 48 L.Ed. 419 (1904)).

Additionally, the Court of Appeals held that the purchasers in *Piper* could not escape the statute of limitations based on the "discovery rule." *Id.* at 319, 113 A.2d 919. Specifically, the Court recognized the

established rule that a party who seeks to avoid the consequences of an apparently unreasonable delay in the assertion of his rights on the ground of ignorance must definitely allege and prove not only the fact of ignorance, but also the time when the fraud, misrepresentation or concealment was discovered; why he was ignorant of his rights so long; and how he discovered the fraud, misrepresentation or concealment. The purpose of the rule is to enable the court to determine whether the complainant might have made the discovery sooner if he had exercised reasonable diligence.

*Id.* at 318, 113 A.2d 919.

Here, as in *Piper,* the Ochses brought their claim well outside of the three year statute of limitations. Yet, the record indicates that the Ochses did exercise reasonable diligence by hiring a title search company, which failed to unearth

the 1919 deed.[7] In fact, it was not until the Ochses filed suit that the Henrys brought the 1919 deed to the attention of the Ochses and the circuit court.

The Ochses reference several segments of deposition and trial testimony, emphasizing that "Mr. Henry was not aware of the *legal* significance of the road" through the property. In its September 17, 2009, opinion the circuit court stated:

> After considering the relevant portions of Mr. Henry's deposition transcript, as well as assessing the credibility of his testimony at trial, the Court finds that although Mr. Henry was aware of the "dirt road," which he also referred to as a "right of way," Mr. Henry was not aware of the legal significance of that road. Mr. Henry had some vague knowledge that people had occasionally used the property as a thoroughfare and disclosed what he knew explicitly and impliedly (e.g., blocked road) to the Ochses. Simply put, Mr. Henry told the Ochses and [their real estate agent] what he knew about the dirt road and made no intentional misrepresentations as to the "driveway." Because the "driveway" as Mr. Henry knew it was depicted on the 1998 plat, Mr. Henry would have no reason to investigate further into the status of the "driveway." Furthermore, there is insufficient evidence to demonstrate that the Henrys intentionally withheld from the Ochses and [their real estate agent] the letter of November 15, 2001,[8] which was received by Mrs. Barbara Garey, with the purpose of defrauding the Ochses. Therefore, the Court finds that the Ochses have

---

7. Though outside the record of this appeal, the Ochses have recently filed suit against the title search company.

8. The letter dated November 15, 2001 from Charles Cooper, Administrative Aide at the Caroline County Department of Public Works, to Ms. Barbara Garey, the Henrys' listing agent, read as follows:

> To whom it my [sic] concern: This letter is to inform you that this road (Mowbray Creek) is a private road. This road does not belong to the Caroline County. Part of (Mowbray Creek) is in Caroline County, and part of it in Dorchester County. We maintain nothing on this road. If you have any other questions or concerns, feel free to contact me at [telephone number].

not demonstrated by clear and convincing evidence that the Henrys made any misrepresentations with the purpose of defrauding the Ochses.

As a result, the circuit court found that the Henrys honestly and reasonably believed that they were selling a single parcel of 4.791 acres, more or less, that was free of encumbrances to the Ochses. Additionally, the circuit court found that the Henrys did not act with reckless indifference in making any representations to the Ochses regarding the property, and therefore, made no misrepresentations to the Ochses.

After having the opportunity to judge the credibility of the witnesses, the circuit court concluded that the Henrys did not fraudulently induce the Ochses to purchase the property because, though Mr. Henry knew that the area had been used as a road, he honestly believed that it was merely an old dirt road and had no reason to suspect that Dorchester County owned a segment of the property. Therefore, we hold that the circuit court did not err in concluding that the Henrys had no knowledge of falsity or act with reckless disregard for truth or falsity with respect to their statements regarding the property they sold to the Ochses. *See Piper*, 207 Md. at 313–14, 113 A.2d 919.

The Ochses further contend that the circuit court erred as a matter of law because its findings of fact establish that the Henrys were "willfully blind," which is a type of actionable fraud in Maryland. The Ochses assert that Mr. Henry effectively admitted that he chose to be willfully blind about the origin and nature of the road. "Willful blindness occurs when a person 'has his suspicion aroused but then deliberately omits to make further enquiries, because he wishes to remain in ignorance.'" *Hoffman v. Stamper*, 385 Md. 1, 44, 867 A.2d 276 (2005) (quoting *State v. McCallum*, 321 Md. 451, 459–60, 583 A.2d 250 (1991) (Chasanow, J., concurring)). Although Mr. Henry was aware that there was an old road or "right of way" across the property that no one used any more, it did not mean that he had his "suspicion aroused," or that he appreciated the significance of other people using

what was essentially a dirt path across his property. Only a few ATV riders and dirt bikers had used it, and that was before Mr. Henry blocked the path with an old tire. Accordingly, we are not persuaded that the Henrys were willfully blind and deliberately omitted to further inquire about a possible county road over the property.

### B. Mutual Mistake

■■■ Before we proceed, we note that the Ochses preserved the issue of mutual mistake for review. First, the Ochses were not aware of the 1919 deed to the county until the Henrys raised it once litigation had begun and, thus, could not have addressed it in their complaint. Second, the Ochses were not required to address the affirmative defense of merger in their complaint. Third, the Ochses brought the issue of mutual mistake to the court's attention in their pretrial statement, noting that there was clearly either fraud or mutual mistake to avoid merger. Fourth, based on the evidence presented at trial, the Ochses argued in closing argument that mutual mistake avoided merger of the contract into the deed. Finally, when the circuit court issued its opinion with findings that established mutual mistake, but did not apply those facts to avoid merger, the Ochses filed a timely motion to alter or amend judgment, pointing out the court's error and giving it an opportunity to correct the omission.

■■■ In *Marcus v. Bathon, supra,* 72 Md.App. at 484, 531 A.2d 690, we addressed mutual mistake of fact. The purchaser in *Marcus* relied on "*both* a correct metes and bounds description of the parcel *and* an incorrect representation of the acreage of the parcel." *Id.* (emphasis in original). However, because the description of the property in the deed used the term "more or less" and the metes and bounds of the sold property was accurate, we concluded that the deed was in gross and the purchaser "got exactly what she bargained for." *Id.* at 485, 531 A.2d 690. "When land sold by metes and bounds or by any other definite description is estimated to contain a specified quantity [of land] qualified by the words 'more or less,' the statement of quantity is construed as a

matter of description, and not as the essence of the contract." *Id.* (citing *Wagner v. Bing,* 163 Md. 496, 501, 163 A. 199 (1932); *Jenkins v. Bolgiano,* 53 Md. 407, 421 (1880)).

As in *Marcus,* the overall acreage the Henrys conveyed to the Ochses at the time of the deed was less than the quantity listed on the deed. This deviation as to the size of the parcel, in accordance with *Marcus,* does not rise to the level of mutual mistake of fact, reading "+/-" as "more or less." The circuit court, however, found that both the Henrys and the Ochses did not know that the 12–foot wide driveway on the property was actually part of a 30–foot wide strip of land then owned by Dorchester County. The fact that there was a segment of land owned by Dorchester County running through the property is eminently significant as it divided the property into two smaller parcels, greatly limiting the use, development, market-ability, and merchantability of the property.

The factual scenario in this case could not have occurred in the absence of fraud or mutual mistake. If the Henrys knew that there was a road across the property and did not disclose this to the Ochses, there was fraud. If neither party was aware of the road across the property, there was mutual mistake of material fact. Because the circuit court found the absence of fraud, there must have been mutual mistake. Accordingly, the contract of sale did not merge into the deed, and the Ochses should have been able to sue on the contract. Nevertheless, as a result of the mediation this Court ordered, the Ochses received Dorchester County's interest in the 30–foot wide strip across the Ochses' parcel. The issue of title is thus resolved because the Ochses now own the entirety of the 4.791 acre parcel in fee simple absolute.

## C. Attorney's Fees

The circuit court awarded attorney's fees to the Henrys based on paragraph 28 of the contract, which states:

> In any action or proceeding between the Buyer and the Seller based, in whole or in part, upon performance or no performance of the terms and conditions of this Contract,

including, but not limited to, breach of contract, negligence, misrepresentation or fraud, the prevailing party in such an action or proceeding shall be entitled to receive reasonable attorney's fees from the other party as determined by the court arbitrator.... *The provision of paragraph 28 shall survive closing and shall not be deemed to have been extinguished by merger with the deed.*

(Emphasis added).

In light of our holdings above, we conclude that the circuit court was acting within the terms of the contract and deed by awarding attorney's fees. Regardless of whether the contract merged with the deed, the attorney's fees provision of the contract survived. The apportionment of attorney's fees, however, was in error. While the Henrys did not breach the special covenants because the defect in title was created by their predecessors in title, the Henrys had a duty to convey marketable title to the 4.791 acres in the contract, which survives merger with the deed on the basis of mutual mistake. The Ochses now own the 4.791 acre parcel in fee simple, but at the time of the conveyance, the Henrys did not convey marketable title to the Ochses, breaching the contract. As such, we shall vacate the circuit court's determination of attorney's fees and remand for that court to reconsider its award of attorney's fees in light of this opinion.

**JUDGMENT OF THE CIRCUIT COURT FOR DORCHESTER COUNTY REVERSED. AWARD OF ATTORNEY'S FEES VACATED. CASE REMANDED TO THE CIRCUIT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY APPELLEES.[9]**

---

9. Judge Kehoe did not participate in the Court's decision to designate this opinion for publication in the Maryland Appellate Reports pursuant to Maryland Rule 8–605.1.